IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBERLY A. HARRIS,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 6:14-cv-01821-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Claimant Kimberly Harris brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act.

    The issues before this Court are whether the Administrative Law Judge (ALJ) erred in (1) evaluating Harris's credibility; (2) rejecting the opinions of two of Harris's treating psychologists; and (3) failing to fully develop the mental health record. Because the ALJ provided specific, clear and convincing reasons for her determination that are supported by substantial evidence in the record, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Harris applied for SSI on August 17, 2010, alleging disability since January 20, 2006. Tr. 14, 136.[1] Her claim was denied initially and upon reconsideration. Tr. 14, 98, 102. Harris timely

---

[1] Tr. Refers to the transcript of the Social Security Administrative Record, ECF No. 12, provided by the Commissioner.

1 – OPINION AND ORDER

requested a hearing before an ALJ, and appeared before the Honorable Marilyn S. Mauer on January 4, 2013. Tr. 36–65. ALJ Mauer denied Harris's claim by written decision dated January 17, 2013. Tr. 14–23. Harris sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–3. Harris now seeks judicial review.

Harris, born on November 28, 1973, has a high school education and no relevant job experience. Tr. 22. Her only past employment was a short-term position in 1997 making pizza dough. Tr. 18. She attested that she discontinued that job because it aggravated her knee pain. Tr. 22, 348; *but see* Tr. 273 ("She indicated that she has been fired in the past."). However, Harris testified that only her mental condition prevents her from working. Tr. 49. She suffers from post-traumatic stress disorder (PTSD), depression,[2] and a history of substance abuse. Tr. 16. Harris's substance abuse issues have been in remission since she completed treatment in 2009. Tr. 19, 51, 57. Harris was thirty-nine years old at the time of the administrative hearing. Tr. 22, 39.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

---

[2] The record indicates that Harris has suffered an extensive history of emotional, physical, and sexual abuse, as well as grief related to the deaths of her brother and sister. *See generally* Tr. 230–48, 272–74, 294.

2 – OPINION AND ORDER

## DISABILITY ANALYSIS FRAMEWORK

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to those steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner bears the burden of demonstrating that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.* "If the Commissioner fails to meet this burden, then the claimant is disabled. If, however, the Commissioner proves that the claimant is able to perform work that exists in significant numbers in the national economy, then the claimant is not disabled." *Carroll v. Colvin*, No. 6:12-cv-02176-MC, 2014 WL 4722218, at *2 (D. Or. Sept. 19, 2014).

## DISCUSSION

Harris contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, Harris argues that the ALJ: (1) erred in evaluating Harris's credibility; (2) erred in rejecting the opinions of two treating psychologists; and (3) failed to fully develop the mental health record.

### I.   Harris's Testimony

Harris contends that the ALJ improperly rejected her testimony because the ALJ failed to provide specific, clear and convincing reasons supporting her decision to do so. Pl.'s Br. 18, ECF No. 17. An ALJ must consider a claimant's subjective symptom testimony, including statements regarding workplace limitations. *See* 20 C.F.R. §§ 404.1529, 416.929. However, an ALJ may discredit a claimant's testimony for clear and convincing reasons. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). This Court "must uphold the ALJ's decision where the evidence is

3 – OPINION AND ORDER

susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted). In this case, the ALJ provided clear and convincing reasons based on rational interpretations of the evidence to support her determination of Harris's credibility. Although the ALJ devotes a full page of her opinion to outlining the reasons for rejecting Harris's testimony, those reasons can be summarized by three broad categories: over-reporting, lack of motivation, and inconsistency with daily activities. Tr. 21–22.

ALJ Mauer discredited Harris, in part, for over-reporting her symptoms. *See* Tr. 21. When evaluating a claimant's credibility, an ALJ may properly consider the claimant's tendency to exaggerate her symptoms, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), her positive response to treatment, *Wells v. Colvin*, No. 6:14-cv-0654-MC, 2015 WL 1492439, at *6 (D. Or. Apr. 1, 2015), and any deliberate efforts to bolster her SSI application, *see Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Here, substantial evidence supports the ALJ's consideration of all three factors. First, Dr. Scott's report expresses concern about the validity of Harris's psychological test results based on her tendency to over-report or exaggerate the extent of her symptoms. Tr. 274, 278. Second, Harris testified that her anti-anxiety medication was working well, tr. 42, and, third, Harris admitted to her counselor that "she is primarily in counseling because . . . it will help her obtain SSI." Tr. 372, 400 (lawyer encouraged her to seek counseling to bolster her SSI application); *contra* Tr. 48 (testifying during the hearing that she needed counseling). For these reasons, the ALJ's reliance on Harris's tendency to over-report her symptoms in assessing Harris's credibility was proper.

The ALJ may also consider the claimant's lack of motivation when assessing the claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Davies v. Colvin*,

4 – OPINION AND ORDER

No. 6:14-cv-00491-MC, 2015 WL 4571107, slip op. at *3 (D. Or. July 28, 2015). ALJ Mauer found that:

> Harris further testified that she has not worked since 1997 because when she tried to work it aggravated her knees. She supported herself during that time on her husband's income and on supplemental security benefits received by her disabled children. Two of her children continue to receive supplemental security income benefits. Ms. Harris has had no need to work in the past and has no incentive to return to the workforce at this time.

Tr. 22. Harris testified that only her mental condition prevented her from working.[3] Tr. 49. Yet there is no evidence that she attempted to work but could not do so due to her mental condition. Instead, the record shows that Harris has never held a full time job, Tr. 40; that her "soon to be ex-husband" financially supported the family prior to the hearing, Tr. 40, 326; that in 2009, her partner was in trouble with the law for "trying to help [Harris's] kids via the money he was getting from selling drugs," Tr. 220, but by 2012, he was working in the logging business, Tr. 346; and that her counselor was working with her on "the challenges of trying to 'get straight' . . . i.e., it takes extra motivation to take a regular job and earn less money . . . ." Tr. 220. Further, Harris stated childcare would be an issue if she worked outside of the home. Tr. 188.

Harris argues that focusing on the facts listed above distracts us from the true issues in this case: "[her] cognitive problems and problems with anxiety." Pl.'s Reply Br. 2, ECF No. 19. As for cognitive problems, Harris testified that she would be unable to work because she has "difficulty concentrating," but testified that she could adequately pay attention when she drove, prepared meals, and provided care for her children. Tr. 48–49. She repeatedly alleged that she

---

[3] In a Pain & Fatigue Questionnaire that Harris completed in 2010, she also stated that it would be a challenge to fulfill both her current household duties and employment duties outside the home due to her knee pain. Tr. 188. Since Harris testified that her knee pain does not prevent her from working, Tr. 49, and the Vocational Expert provided three potential positions that Harris could perform—each of which had sitting options, Tr. 60–61—this Court limits its review to disability stemming from Harris's mental condition.

has anxiety when she leaves the house and is around crowds or new people. *E.g.*, Tr. 42, 47, 53, 185, 188, 202, 272–73. However, when Harris was asked about her anxiety by the ALJ during the hearing she provided the following undetailed response:

> ALJ: Is there any way in which your anxiety affects your ability to function?
>
> Harris: Stress.
>
> ALJ: What does that mean?
>
> Harris: Just life is stressful for me.

Tr. 49. Harris offered no more information relating to anxiety attacks which could assist the ALJ in her disability determination. This fails to demonstrate how Harris's anxiety affects her at a disabling level.

With medication, Harris reported to her counselor that her anxiety is well-controlled, Tr. 245, dropping from a level "8" to a level "3," *compare* Tr. 290 *with* Tr. 287. It is a rational interpretation of Harris's testimony and the record that her mental condition does not present limitations which would prevent her from attempting to work outside the home. It is also a rational interpretation of her work history and her statements to her counselors that Harris has no interest in attempting to work outside of the home. Therefore, in making her credibility determination, the ALJ's reliance on Harris's lack of motivation to seek employment was proper.

An ALJ must make "'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). However, when a claimant suffers from a mental condition, her ability to complete activities that do not directly contradict her diagnosis does not necessarily demonstrate transferability to the workplace. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

6 – OPINION AND ORDER

1989) (claimant suffering from psychosis who was able to complete short-term volunteer work did not demonstrate ability to maintain gainful employment). Harris's activities demonstrate an ability to fulfill the physical demands of employment consistent with the ALJ's RFC. However, none of her activities demonstrate that she will not suffer an anxiety attack from exposure to strangers. The only activity that Harris reports requires her to regularly interact with unfamiliar people is grocery shopping, which she does early in the morning to limit her interaction with others. Tr. 47. ALJ Mauer does not provide specific findings that Harris performs activities which demonstrate that she could successfully function in a workplace where she is surrounded by other people. Therefore, in making her credibility determination, ALJ Mauer's reliance of Harris's daily activities was improper.

The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004). Substantial evidence supports that Harris is not entirely credible because she over-reported her symptoms and has shown a lack of motivation to seek employment. ALJ Mauer did not err in evaluating Harris's credibility.

## II. The Rejection of Medical Opinion Evidence from Two Treating Psychologists

The record consists of multiple medical opinions addressing Harris's mental and physical health. Three of the opinions related to Harris's mental health were addressed directly by ALJ Mauer: treating psychologist Dr. Scott, tr. 20; treating psychologist Dr. Roman, tr. 20; and non-examining, state-appointed medical advisor, Dr. Eder, tr. 22. Little weight was given to the opinions of Dr. Scott and Dr. Roman, tr. 20, while great weight was given to Dr. Eder's opinion,

7 – OPINION AND ORDER

tr. 22. Dr. Scott and Dr. Roman both identified "marked limitations"[4] in certain functioning areas, tr. 281, 353, and Dr. Eder found that Harris was not disabled, tr. 91, and only suffered "moderate limitations" in some functioning areas, tr. 89–90.

ALJ Mauer found that Dr. Eder's assessment "is consistent with the medical record and evidence as a whole." Tr. 22. Meanwhile:

> [W]ithout explanation, a marked limitation in the ability to complete a workday was assessed. Dr. Scott's marked limitations in the ability to perform simple work and to accept instructions from supervisors [is] also given little weight as they are unsupported by objective evidence in the record, the claimant is far less than credible in her self-reporting, and further evidence supports the ability to perform at least simple work with occasional social contact.

Tr. 20 (citations omitted). Additionally, ALJ Mauer found that the marked limitations identified by Dr. Roman were either outside of her area of expertise, based entirely on Harris's unreliable self-reporting, or inconsistent with Harris's reported activities. Tr. 20–21.

In disability benefits cases, the ALJ must consider the nature of the relationship between the claimant and the physician, and must assign weight accordingly. *See Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). A treating physician's opinion should be accorded more weight than an examining physician's opinion, and an examining physician's opinion should be accorded more weight than that of a non-examining physician. *Id.* at 1202. However, "an ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor if she . . . provides 'specific and legitimate' reasons supported by substantial evidence in the record." *Id.* The opinion of a non-examining physician alone does not constitute substantial evidence sufficient to reject the opinion of a treating physician, but must be

---

[4] "Marked—There is a serious limitation in this area. There is a substantial loss in the ability to effectively function." Tr. 353 (definition provided in the Soc. Sec. Admin. Office of Disability Adjudication and Review, *Medical Source Statement of Ability to do Work-Related Activities (Mental)*, OMB No. 0960-0662).

8 – OPINION AND ORDER

additionally supported by "objective tests, reports from other physicians, testimony from the claimant, or other evidence [that] conflicts with the opinion." *Robinson v. Colvin*, No. 6:12-cv-02175-HA, 2014 WL 1269674, at *3 (D. Or. Mar. 21, 2014). Important to this analysis, "if the ALJ properly discounts the claimant's credibility, [s]he may reject a treating physician's opinions that are based upon the claimant's self-reports." *Zamora v. Astrue*, 853 F. Supp. 2d 1048, 1059 (D. Or. 2011).

### A. Dr. Scott's Opinion

Dr. Scott concluded that Harris has marked limitations in her ability to: (1) understand, remember, and carry out detailed instructions; (2) understand and remember simple instructions; (3) accept instructions and appropriately respond to supervisors; (4) maintain attention and concentration throughout a full workday; (5) complete a full workday without unreasonable breaks; and (6) sustain an ordinary routine without special supervision. Tr. 280–81. The first marked limitation is reflected in the RFC, which states that Harris "can understand and carry out simple instructions," tr. 18, thus implying that Harris is limited in her ability to appropriately handle detailed instructions. However, this statement in the RFC directly contradicts the second marked limitation identified by Dr. Scott.

The ALJ accorded the second and third marked limitations identified by Dr. Scott little weight because they are unsupported by objective evidence in the record, based on Harris's unreliable self-reports, and evidence that she can perform simple work with occasional social contact. Tr. 20. This is a sufficient "specific and legitimate" reason if supported by the record.

Evidence supporting Dr. Scott's conclusion includes the WAIS-IV score coupled with Harris's Global Assessment of Functioning (GAF) scores. On the WAIS-IV, Harris scored lowest in her verbal reasoning abilities, which were assessed as "borderline" even though they

9 – OPINION AND ORDER

were above only 2% of her peers. Tr. 276. Dr. Scott interpreted this as "suggest[ing] that she would have significant difficulty understanding and following verbal instructions whether they be written or verbally given to her." Tr. 277. Harris's composite IQ was 78, tr. 275, which, while borderline, does not evince an intellectual disability, 20 C.F.R. pt. 404, subpart P. app. 1, Listing 12.05(B)–(C) (2015). Harris self-reported her cognitive abilities to a counselor as: "I'm like the dumb blonde in the dumb blonde jokes. Things are just hard for me to comprehend." Tr. 320. Finally, Harris's GAF scores ranged from 36 to 46 over a four year period. Tr. 217, 308, 312, 322, 366, 406. GAF scores below 50 indicate that the claimant may have serious mental limitations. *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) [hereinafter *DSM-5*].

Despite these factors, there is also significant evidence in the record to support the ALJ's decision to assign little weight to Dr. Scott's conclusion. Dr. Scott's report begins with a clear warning that "all information in this evaluation is based solely on comments during the interview." Tr. 271. Since ALJ Mauer determined that Harris was not credible, Tr. 20–21, she may properly discount medical opinions based on Harris's self-reporting, *Zamora*, 853 F. Supp. 2d at 1059. On several of the psychological tests administered, Dr. Scott questioned the validity of the results based on an "elevated malingering index" and "significant concerns with over reporting." Tr. 274. Dr. Scott did not specifically note validity concerns for the WAIS-IV test, *see* Tr. 274–75, but made a general note that Harris's mental health was hard to assess based on her apparent "attempts to distort her psychological profile . . . ." Tr. 277. It is unclear from the record whether Dr. Scott's note expressing concern about the validity of Harris's test applied to all of the tests he conducted, or just to those he specifically deemed invalid. *See* Tr. 277.

10 – OPINION AND ORDER

Further, Dr. Roman, who reviewed Dr. Scott's opinion, found that "Harris was able to understand and remember simple instructions during the interview." Tr. 351. Dr. Roman even found that Harris could likely understand and remember slightly more complicated instructions. Tr. 351. Additionally, Harris's activities demonstrate at least a basic ability to follow simple instructions, and Dr. Scott noted that Harris "appears to believe that she could do a full-time job if allowed to sit and focus on a single task with no counting of money." Tr. 277. He additionally made recommendations for restrictions on the types of employment Harris should pursue. Tr. 278 ("limited cooperation with others" and "the ability to alternate sitting and standing"). It is a rational interpretation of these statements that Harris is capable of performing work with the limitations prescribed by Dr. Scott.

Harris further argues that her consistently low GAF scores are determinative in assessing her longitudinal mental health, and the ALJ therefore erred in her consideration of the scores. Pl.'s Br. 13, ECF No. 17. However, an ALJ's failure to address GAF scores does not constitute legal error where the RFC is consistent with the evidence in the record. *McFarland v. Astrue*, 288 Fed. App'x 357, 359 (9th Cir. 2008). The use of GAF scores as substantial evidence to support the claimant's allegations of mental impairment is generally disfavored. *See Hales v. Colvin*, No. 6:14-cv-01050-MC, 2015 WL 5665383, at *2 (D. Or. Sept. 24, 2015); *but see Bonk v. Astrue*, No. 3:11-cv-00637-BR, 2012 WL 5830392, at *11 (D. Or. Nov. 16, 2012) (holding that consistently low GAF scores from multiple providers may constitute substantial evidence). The Social Security Administration has determined that a GAF score "does not have a direct correlation to the severity requirements in [the] mental disorders listing." Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000). Beyond that: "It has been recommended that the GAF be dropped from the

11 – OPINION AND ORDER

DSM-5 for several reasons including lack of clarity . . . and questionable psychometrics in routine practice." *DSM-5* at 16.

The ALJ directly addressed one of the six GAF scores in the record, according it little weight because it was inconsistent with Harris's activities and overall functioning at that time. Tr. 19. The ALJ also highlighted some of the stressors in Harris's life at the time of the GAF assessment. Tr. 19. Upon review of the record, it appears each of the GAF assessments was performed when Harris had significant stress-creating factors in her life, including instability in her relationship with her significant other, financial concerns, or preparations for surgery. Tr. 307, 315, 318–22, 364–65, 400. Because GAF scores are generally disfavored and the ALJ not only addressed them, but provided her reason for assigning them little weight, she did not err in her consideration of Harris's GAF scores.

This Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40. Accordingly, I uphold the ALJ's determination that the evidence in the record does not support Dr. Scott's determination that Harris is unable to perform simple work and accept instructions from supervisors and that this opinion should be given little weight.

The ALJ also assigned little weight to Dr. Scott's conclusion that Harris had a "marked limitation in the ability to complete a workday." Tr. 20. The ALJ rejected this conclusion based on the fact that Dr. Scott failed to provide any support for or explanation as to how he reached it, and I find none in the record. An ALJ is not required to "accept a [treating physician's] brief, conclusory, or inadequately supported opinion." *Hales*, 2015 WL 5665383, at *2. I therefore uphold the ALJ's decision to assign little weight to this conclusion.

12 – OPINION AND ORDER

For all of these reasons, I find that the ALJ properly rejected Dr. Scott's opinion for specific, legitimate, clear and convincing reasons.

**B.    Dr. Roman's Opinion**

As to Dr. Roman's opinion, Dr. Roman based her opinion on an assessment of Harris's counseling records, Dr. Scott's opinion, a clinical interview with Harris, and administered tests to evaluate Harris's mental status. Tr. 346. Dr. Roman found that Harris scored "adequate" in the WMS-R Information & Orientation and Mental Control tests, in the "low average range" on the WAIS-IV test, had a 19 year old age equivalent, a 5.3 grade equivalent, and scored in the "severe" range for both anxiety and depression. Tr. 350–51. Dr. Roman ultimately concluded that Harris is able to understand simple and slightly complicated instructions. Tr. 351. Despite scoring in the low average range for ability to pay attention and concentrate, Dr. Roman found that it would be difficult for Harris to "maintain attention and concentration throughout a normal work week and work day" due to her physical presentation. Tr. 351. Finally, Dr. Roman found a marked limitation in Harris's ability to interact with the public, supervisors, and coworkers.[5] Tr. 354. Dr. Roman based her conclusion on Harris's ability to interact with others solely on Harris's self reports. *See* Tr. 354. That subjective symptom testimony, and the ALJ's attached credibility assignment, is consistent with the records of Harris's self-reports made during previous counseling sessions. Tr. 351.

The ALJ accorded little weight to two of Dr. Roman's conclusions. Tr. 20–21. First, the ALJ rejected that Harris's physical state would prevent her from maintaining attention and concentrating throughout a normal workday. Tr. 20. This rejection is supported by two specific

---

[5] Dr. Roman also found a marked limitation in Harris's ability to understand and process complex information. Tr. 353. Since the ALJ's RFC limits Harris to simple instructions, Tr. 18, this part of Dr. Roman's conclusion need not be reached.

13 – OPINION AND ORDER

and legitimate reasons: (1) the ALJ found that the effect of Harris's physical state on her ability to concentrate is not Dr. Roman's area of expertise, Tr. 20; *see also Pappe v. Colvin*, No. 1:13-cv-0160-AA, 2014 WL 4850880, at *7 (D. Or. Sep. 26, 2014) (upholding an ALJ's rejection of a treating physician's statement because it was outside the realm of the physician's expertise); and (2) Dr. Roman's conclusion is based on Harris's self-reports, which were properly deemed not credible, Tr. 20; *Zamora*, 853 F. Supp. 2d at 1059. Similarly, the ALJ rejected Dr. Roman's assessment of marked social limitations because that conclusion is based entirely on Harris's self-reports, Tr. 20–21, which, as discussed above, is a specific and legitimate reason to reject this opinion.[6]

## C. Dr. Eder's Opinion

Dr. Eder reviewed the administrative record, Tr. 79–84, and found that Harris was partially credible in her allegation that she could not follow instructions. Tr. 86–87. Dr. Eder opined that Harris has moderate limitations in her ability to carry out detailed instructions; maintain attention and concentration for extended periods of time; interact with the general public; and be aware of normal hazards. Tr. 89–90. Dr. Eder concluded that Harris was not disabled, Tr. 91, and that she is "capable of occ[asional] contact with other employees and the general public." Tr. 89. The ALJ accorded this opinion "great weight as it is consistent with the medical record and evidence as a whole," Tr. 22, and the ALJ subsequently reflected these limitations in her RFC calculation. Tr. 18. The record shows that Harris regularly completes simple, routine tasks that require simple instructions and sufficient attention, such as preparing meals and grocery shopping. Tr. 47, 49. Meanwhile, the only evidence in the record that Harris is

---

[6] The ALJ also rejected Dr. Roman's assessment of Harris's social capabilities based on her activity level. Tr. 21. As discussed above, neither ALJ Mauer nor the record provide examples of activities that Harris engages in which demonstrate an ability to interact with others.

14 – OPINION AND ORDER

unable to interact with the public is her self-reports. Consistency with the record is a specific and legitimate reason to rely on a non-examining physician's opinion over a treating physician's opinion. *See West v. Colvin*, No. 3:14-CV-01764-SU, 2015 WL 4935491, at *9 (D. Or. Aug. 18, 2015). Because the ALJ provided specific and legitimate reasons to rely on Dr. Eder's opinion rather than Dr. Roman's and Dr. Scott's opinions, she properly rejected the treating psychologists' opinions.

## III.  Full Development of the Administrative Record

Finally, Harris argues that the ALJ failed to fully develop the administrative record, as it lacks a full set of IQ scores, and her IQ level may qualify as an "intellectual disability." Pl.'s Br. 20, ECF No. 17.

The Plaintiff and Commissioner share a duty to fully develop the record. 20 C.F.R. § 416.912(a); *Heide v. Colvin*, No. 6:13-cv-0522-MC, 2015 WL 1477905, at *4 (D. Or. Mar. 30, 2015). The ALJ has a duty to develop the record by ensuring all medical records requested by the claimant are included in the record for the ALJ's consideration. *See id.* When the claimant alleges intellectual disability, a fully developed record includes a full set of IQ scores. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930–31 (9th Cir. 2014).

As a preliminary matter, I note that Harris did not allege before or during the hearing that she suffered from an intellectual disability. Therefore, a duty to include a full set of IQ scores based on that claim did not arise. Even if such a duty had arisen, however, a full set of IQ scores was provided by Dr. Scott.[7] Tr. 275. While that fact renders Harris's argument meritless, I note

---

[7] Harris argues that a full set of scores is not provided because neither a "Verbal IQ" nor a "Performance IQ" score are listed in Dr. Scott's report. She then provides a citation to a source that lists the WAIS-III testing system components. In the record, however, Dr. Scott administered the WAIS-IV system—the standard since 2008—which analyzes the components of IQ listed in his report. A full set of scores is therefore present in the record.

15 – OPINION AND ORDER

also that her scores for each component of IQ exceeded the threshold of intellectual disability. *Compare* 20 C.F.R. pt. 404, subpart P. app. 1, Listing 12.05(B)–(C) (2015) *with* Tr. 275. The ALJ did not fail to properly develop the record.

## CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence in the record, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 17 day of Dec., 2015.

**Michael J. McShane**
**United States District Judge**